STEVEN H. BERGMAN (S.B. #180542)
RICHARDS BRANDT MILLER NELSON
111 E. Broadway, Suite 400
Salt Lake City, Utah 84111
Telephone: (801) 531-2000
Facsimile: (801) 532-5506
steven-bergman@rbmn.com
*Attorneys for Plaintiffs*
*Double Coin Tyre Group, Ltd. and*
*China Manufacturers Alliance LLC*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUBLE COIN TYRE GROUP LTD, a Chinese corporation, and CHINA MANUFACTURERS ALLIANCE LLC, a California limited liability company,<br><br>    Plaintiffs<br><br>    v.<br><br>REGAL NOVA INT, LLC, an Arizona limited liability company, and DOES 1 through 10,<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br>1) **TRADEMARK INFRINGEMENT;**<br>2) **TRADEMARK COUNTERFEITING;**<br>3) **TRADEMARK DILUTION;**<br>4) **FALSE ADVERTISING; &**<br>5) **UNFAIR COMPETITION** |

**Complaint**

Plaintiffs Double Coin Tyre Group Ltd., a Chinese corporation ("DCH") and China Manufacturers Alliance LLC, a California limited liability company, by and through counsel of record, Steven H. Bergman of RICHARDS BRANDT MILLER NELSON, complains as follows against Defendants Regal Nova Int, LLC, an Arizona limited liability company, and Does 1 through 10, persons or entity types unknown.

**Parties, Jurisdiction, and Venue**

1.      Plaintiff Double Coin Tyre Group Ltd. ("DCTG") is a Chinese corporation with a principal place of business in Shanghai, China.

2.      Plaintiff China Manufacturers Alliance LLC ("CMA") is a California limited liability company with a principal place of business in Monrovia, California.

3.      Defendant Regal Nova Int, LLC ("Regal") is an Arizona limited liability company with principal places of business in Paramount, California and Mesa, Arizona.

4.      Defendants Does 1 through 10 are individuals and/or business entities unknown to Plaintiffs who were involved in the importation or distribution of the gray market tires at issue in this action and who sold or provided the gray market tires at issue to Defendant Regal and contributed to the infringement, counterfeiting, dilution, false advertising, and unfair competition described herein.

5.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1331, as Plaintiffs assert claims under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and the district courts have original jurisdiction of all civil actions arising under the laws of the United States.

6.      This Court has personal jurisdiction over Defendant Regal as Defendant Regal maintains a principal place of business in Paramount, California, and is thus subject to the jurisdiction of this Court.

7.      This Court has personal jurisdiction over Doe Defendants as such Defendants committed acts from which this lawsuit arises within the State of California.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendant Regal maintains a place of business in Paramount, California, which is within the territorial limits of this Court and because a substantial part of the events giving rise to Plaintiffs' claims occurred within the territorial limits of this Court.

## General Allegations

9.      DCTG is a manufacturer and seller of medium and heavy-duty truck and bus tires and off-the-road tires, including tires sold under the "Double Coin" name.

10.     DCTG manufactures medium and heavy-duty truck and bus tires and off-the-road tires through subsidiaries located in China and Thailand.

11.     DCTG sells medium and heavy-duty truck and bus tires and off-the-road tires through distributors in China and internationally through distributors who purchase DCTG's tires in China or Thailand.

12.     Plaintiff CMA is one the distributors of Double Coin tires, and has been the exclusive importer of Double Coin tires into the United States for more than twenty years.

13.     CMA purchases Double Coin tires from DCTG in China or Thailand, and ships the tires to the United States.

14.     CMA sells Double Coin tires in the United States to distributors, tire chains, and other tire dealers.

15.     DCTG is the registered owner of two federal trademarks, Registration Nos. 1,363,253 (the "253 Trademark") and 3,335,547 (the "547 Trademark") for use of the "Double Coin" name on the sale of tires.

16.     The 253 Trademark includes both the use of the name "Double Coin on tires and the use of the Double Coin symbol:

2

COMPLAINT

17.     The 547 Trademark includes the use of the name "Double Coin" on tires in the following form:



18.     CMA is the registered owner of one federal trademark, Registration No. 4,493,760 (the "760 Trademark") for the use of the phrase "The Smart Money is on Double Coin" in connection with the sale of tires.

19.     In addition, CMA has a license from DCTG to use the 253 Trademark and the 547 Trademark in the United States and to enforce and protect both marks.

20.     DCTG's Thai subsidiary completed construction of its manufacturing plant in the second half of 2017 and began producing tires soon thereafter.

21.     Quality control assessments of initial production runs concluded that the initial tires did not meet the standards set forth in the Federal Motor Vehicle Safety Standards ("FMVSS"), and DCTG concluded that the tires could not be sold in the United States.

22.     DCTG's Thai subsidiary removed the DOT codes from the tires, thus precluding their sale in the U.S. The tires were deemed "blems" and were earmarked for destruction or sale in other markets.

23.     CMA, the exclusive importer of Double Coin tires into the United States, did not purchase any of the "blems".

24.     DCTG's Thai subsidiary made adjustments to its production process, and soon thereafter began producing Double Coin tires that did meet the FMVSS and could be imported into the U.S. and sold by CMA.

3

## The Gray Market Tires Begin Appearing in the U.S.

25.     In the latter half of 2019, CMA began receiving reports from distributors in the State of Washington of gray market Double Coin tires being sold.

26.     Soon thereafter, CMA learned of gray market Double Coin tires being offered for sale in California and in other states.

27.     A gray market tire is a tire that is not imported into the U.S. through proper channels and is not authorized for sale in the U.S. by the manufacturer, in this case DCTG, or the importer of record, in this case CMA.

28.     CMA obtained one of the gray market tires being sold in Washington. CMA's engineers noted several issues with the tire. First, the "D" and "O" of Double Coin were buffed off, or removed from the tire. Second, the manufacture date code, which comprises the last four digits of the DOT Code that is required on every tire sold in the U.S. for highway use, was buffed off or removed. Third, it appeared that the balance of the DOT Code was rebranded onto the tire. The first three digits of the DOT Code, "02J", is the factory code for one of DCTG's manufacturing plants, but not the factory where the tire was actually manufactured.

29.     CMA's engineers and others concluded that the gray market tire was one of the "blems" from the initial run of DCTG's Thai subsidiary that were not intended for sale in the U.S.

30.     CMA later learned that Defendant Regal was selling some of the gray market tires.

31.     Defendant Regal is not an authorized seller of Double Coin tires and has not purchased Double Coin tires from an authorized seller of Double Coin tires. Double Coin tires distributed by CMA have complete DOT codes, including the manufacture date code, and the complete "Double Coin" name molded onto the tires.

32.     Plaintiffs are informed and believe that Defendant Regal is marketing the gray market, or "blem" tires as the same as Double Coin tires.

4

33.     In late June 2020, after learning that Defendant Regal was the source of some of the gray market tires bearing part of the "Double Coin" trademark and bearing a DOT plant code associated with a DCTG factory, CMA, through counsel, sent a cease and desist letter to Defendant Regal, demanding that it stop selling the tires, identify the source of the tires, and identify its sales of the gray market tires.

34.     Defendant Regal never responded to the letter.

35.     DCTG and CMA want to remove the gray market tires from the road, and prevent their sale, as they harm the DCTG and CMA trademarks and the reputation of Double Coin tires and are not authorized for use on U.S. highways and streets.

36.     Additionally, DCTG and CMA are concerned that the tires could lead to liability claims against DCTG and CMA if one of the gray market tires failed, as the DOT plant code branded onto the tire indicates a DCTG factory.

## First Cause of Action

## (Trademark Infringement, 15 U.S.C. § 1114)

37.     Plaintiffs incorporate Paragraphs 1 through 36 of this Complaint by reference as if stated herein.

38.     Plaintiff DCTG owns two trademarks regarding Double Coin tires – the 253 Trademark which includes the two coin symbol and the 547 Trademark which includes the use of the name "Double Coin" on tires.

39.     Both trademarks were properly issued by the U.S. Patent and Trademark Office, and both trademarks are valid, protectable marks.

40.     Defendant Regal misused the Double Coin marks in two ways – first, by selling and offering for sale tires that contained most of the protected mark contained in the 547 Trademark, as the gray market tires sold and offered for sale by Defendant Regal contained the "Double Coin" mark other than the letters "D" and "O".

41.     Second, by claiming that the gray market tires it was selling were exactly the same as Double Coin tires.

42.     Defendant Regal did not have the consent of Plaintiffs DCTG or CMA to use the Double Coin trademarks, including the 243 Trademark and the 547 Trademark.

43.     Defendant Regal's use of the Double Coin marks was done in such a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods. Among other things:

      a. The Double Coin marks are strong trademarks. Double Coin tires have been sold in the U.S. for more than twenty years and are one of the leading brands of medium and heavy-duty truck and bus tires on the market;

      b. Defendant Regal is using the Double Coin trademarks on the same goods, i.e. medium and heavy-duty truck and bus tires;

      c. The marks on the gray market tires are similar to the Double Coin trademarks, as they have the same style and look except that the gray market tires have the letters "D" and "O" removed. The gray market tires also list a factory code for a DCTG factory;

      d. Defendant Regal has created, or attempted to create actual confusion, claiming the gray market tires are the same as Double Coin tires;

      e. Defendant Regal intended to use DCTG's trademarks and intended to derive benefit from the reputation of DCTG's trademarks; and

      f. Defendant Regal is seeking to sell the gray market tires in the same markets that CMA's distributors sell Double Coin tires.

44.     Defendant Regal had actual or constructive notice of the DCTG Trademarks, including the 253 Trademark and the 547 Trademark.

45.     Defendant Regal's infringement of the DCTG marks has caused damages to DCTG and CMA.

46.     Accordingly, DCTG and/or CMA are entitled to recover for the injury to or loss of reputation, goodwill and general business reputation, lost profits, and the expense of preventing customers from being deceived and corrective advertising reasonably required to correct any public confusion caused by Defendant Regal's infringement.

47.     In addition to actual damages, Plaintiffs are entitled to any profits earned by Defendant Regal that are attributable to the infringement.

48.     Plaintiffs are also entitled to an injunction prohibiting further infringement by Defendant Regal, and an order that Defendant Regal turn over any and all infringing gray market tires in its possession, custody, or control.

## **Second Cause of Action**

### **(Trademark Counterfeiting – 15 U.S.C. § 1116(d))**

49.     Plaintiffs incorporate Paragraphs 1 through 48 of this Complaint by reference as if stated herein.

50.     Plaintiff DCTG owns two trademarks regarding Double Coin tires – the 253 Trademark which includes the two coin symbol and the 547 Trademark which includes the use of the name "Double Coin" on tires.

51.     Both trademarks were properly issued by the U.S. Patent and Trademark Office, and both trademarks are valid, protectable marks.

52.     Defendant Regal misused the Double Coin marks in two ways – first, by selling and offering for sale tires that contained most of the protected mark contained in the 547 Trademark, as the gray market tires sold and offered for sale by Defendant Regal contained the "Double Coin" mark other than the letters "D" and "O".

53.     Second, by claiming that the gray market tires it was selling were exactly the same as Double Coin tires.

54.     Defendant Regal did not have the consent of Plaintiffs DCTG or CMA to use the Double Coin trademarks, including the 243 Trademark and the 547 Trademark.

55.     Defendant Regal's use of the Double Coin trademarks in the manner set forth above constitutes counterfeiting under 15 U.S.C. § 1116(d) in that the mark is a counterfeit of a mark that is registered on the principal register in the U.S.P.T.O. for the sale of medium and heavy-duty truck and bus tires and the marks used by Defendant Regal are a spurious designation that is identical with, or substantially indistinguishable from the Double Coin trademarks.

56.     Defendant Regal had actual or constructive notice of the DCTG Trademarks, including the 253 Trademark and the 547 Trademark.

57.     Defendant Regal's counterfeiting of the DCTG marks has caused damages to DCTG and CMA.

58.     Accordingly, DCTG and/or CMA are entitled to recover for the injury to or loss of reputation, goodwill and general business reputation, lost profits, and the expense of preventing customers from being deceived and corrective advertising reasonably required to correct any public confusion caused by Defendant Regal's infringement.

59.     In addition to actual damages, Plaintiffs are entitled to any profits earned by Defendant Regal that are attributable to the infringement.

60.     Plaintiffs may also be entitled to treble damages, or, alternatively, statutory damages of between $1,000 and $200,000 for each counterfeit tire sold by Defendant Regal.

61.     Plaintiffs are also entitled to an injunction prohibiting further infringement by Defendant Regal, and an order that Defendant Regal turn over any and all infringing gray market tires in its possession, custody, or control along with any record regarding the sale of the gray market tires.

**Third Cause of Action**

**(Trademark Dilution – 15 U.S.C. § 11)**

62.     Plaintiffs incorporate Paragraphs 1 through 61 of this Complaint by references as if stated herein.

63.     Plaintiff DCTG owns two trademarks regarding Double Coin tires – the 253 Trademark which includes the two coin symbol and the 547 Trademark which includes the use of the name "Double Coin" on tires.

64.     Both trademarks were properly issued by the U.S. Patent and Trademark Office, and both trademarks are valid, protectable marks.

65.     Defendant Regal misused the Double Coin marks in two ways – first, by selling and offering for sale tires that contained most of the protected mark contained in the 547 Trademark, as the gray market tires sold and offered for sale by Defendant Regal contained the "Double Coin" mark other than the letters "D" and "O".

66.     Second, by claiming that the gray market tires it was selling were the same as Double Coin tires.

67.     Defendant Regal did not have the consent of Plaintiffs DCTG or CMA to use the Double Coin trademarks, including the 243 Trademark and the 547 Trademark.

68.     The Double Coin trademarks are widely recognized in connection with the sale and distribution of medium and heavy-duty truck and bus tires and are associated with Plaintiffs DCTG and CMA.

69.     Plaintiffs use the Double Coin marks throughout the U.S. and have done so for more than twenty years and make substantial sales of truck and bus tires using the Double Coin trademarks.

70.     Defendant Regal's infringement of the Double Coin trademarks constitutes "dilution by blurring" in that Defendant Regal's sale of the gray market

9

COMPLAINT

tires bearing the Double Coin trademarks impairs the distinctiveness of the Double Coin trademarks. Among other things:

      a.  Defendant Regal's gray market tires have a very similar mark to the Double Coin trademarks with only the letters "D" and "O" removed from the Double Coin trademarks;

      b.  The Double Coin trademarks have acquired distinctiveness with respect to the sale and distribution of medium and heavy-duty truck and bus tires;

      c.  Plaintiff DCTG is the only manufacturer of Double Coin tires, and Plaintiff CMA is the exclusive U.S. importer of Double Coin tires;

      d.  The Double Coin trademarks are well-recognized; and

      e.  Defendant Regal intend to create an association with the Double Coin trademarks.

71.    Defendant Regal's infringement also constitutes "dilution by tarnishment" as the marks on the gray market tire were nearly identical to the Double Coin trademarks, except for the removal of the "D" and the "O".

72.    To prevent ongoing dilution of the Double Coin trademarks, Plaintiffs are entitled to an injunction prohibiting further infringement by Defendant Regal, and an order that Defendant Regal turn over any and all infringing gray market tires in its possession, custody, or control along with any records regarding the sale of the gray market tires.

73.    DCTG and/or CMA are entitled to recover for the injury to or loss of reputation, goodwill and general business reputation, lost profits, and the expense of preventing customers from being deceived and corrective advertising reasonably required to correct any public confusion caused by Defendant Regal's infringement.

74.    In addition to actual damages, Plaintiffs are entitled to any profits earned by Defendant Regal that are attributable to the infringement.

COMPLAINT

**Fourth Cause of Action**

**(False Advertising – 15 U.S.C. 1125(a))**

75.     Plaintiffs incorporate Paragraphs 1 through 74 of this Complaint by reference as if stated herein.

76.     Plaintiff DCTG owns two trademarks regarding Double Coin tires – the 253 Trademark which includes the two coin symbol and the 547 Trademark which includes the use of the name "Double Coin" on tires.

77.     Both trademarks were properly issued by the U.S. Patent and Trademark Office, and both trademarks are valid, protectable marks.

78.     Defendant Regal made false or misleading statements of fact in a commercial advertisement about the gray market tires, claiming they were exactly the same as Double Coin tires.

79.     Defendant Regal's statements either deceived or had the capacity to deceive a substantial segment of potential consumers.

80.     Defendant Regal's deception is material, in that it is likely to influence a truck tire buyer's purchasing decision.

81.     Defendant Regal sold the gray market tires in interstate commerce by advertising the gray market tires using interstate communication methods.

82.     Plaintiffs have been or are likely to be injured as a result of the Defendant's false statements.

83.     Accordingly, DCTG and/or CMA are entitled to recover for the injury to or loss of reputation, goodwill and general business reputation, lost profits, and the expense of preventing customers from being deceived and corrective advertising reasonably required to correct any public confusion caused by Defendant Regal's false advertising.

84.     In addition to actual damages, Plaintiffs are entitled to any profits earned by Defendant Regal that are attributable to the false advertising.

85.     Plaintiffs are also entitled to an injunction prohibiting further false advertising by Defendant Regal.

**Fifth Cause of Action**

**(Unfair Competition – 15 U.S.C. § 1125)**

86.     Plaintiffs incorporate Paragraphs 1 through 85 of this Complaint by reference as if stated herein.

87.     Plaintiff DCTG owns two trademarks regarding Double Coin tires – the 253 Trademark which includes the two coin symbol and the 547 Trademark which includes the use of the name "Double Coin" on tires.

88.     Both trademarks were properly issued by the U.S. Patent and Trademark Office, and both trademarks are valid, protectable marks.

89.     Defendant Regal misused the Double Coin marks in two ways – first, by selling and offering for sale tires that contained most of the protected mark contained in the 547 Trademark, as the gray market tires sold and offered for sale by Defendant Regal contained the "Double Coin" mark other than the letters "D" and "O".

90.     Second, by claiming that the gray market tires it was selling were exactly the same as Double Coin tires.

91.     Defendant Regal did not have the consent of Plaintiffs DCTG or CMA to use the Double Coin trademarks, including the 243 Trademark and the 547 Trademark.

92.     Defendant Regal's misuse of the Double Coin trademarks constitutes unfair competition under the Lanham Act.

93.     Plaintiffs have been or are likely to be injured as a result of the Defendant's unfair competition.

94.     Accordingly, DCTG and/or CMA are entitled to recover for the injury to or loss of reputation, goodwill and general business reputation, lost profits, and the expense of preventing customers from being deceived and corrective

advertising reasonably required to correct any public confusion caused by Defendant Regal's unfair competition.

95.     In addition to actual damages, Plaintiffs are entitled to any profits earned by Defendant Regal that are attributable to the unfair competition.

96.     Plaintiffs are also entitled to an injunction prohibiting further unfair competition by Defendant Regal.

WHEREFORE, Plaintiffs pray as follows:

A.     For entry of Judgment in favor of Plaintiffs and against Defendants;

B.     For damages to compensate Plaintiffs for the injury to or loss of reputation, goodwill and general business reputation, lost profits, and the expense of preventing customers from being deceived and corrective advertising reasonably required to correct any public confusion caused by Defendant Regal;

C.     For Defendants' profits attributable to Defendants' infringement, counterfeiting, dilution, false advertising, and unfair competition;

D.     For treble damages arising from Defendants' counterfeiting;

E.     Alternatively, for statutory damages arising from Defendants' counterfeiting in an amount of $1,000 to $200,000 per gray market tire sold by Defendants;

F.     For an injunction prohibiting further infringement, counterfeiting, dilution, false advertising and/or unfair competition by Defendants;

G.     For an order that Defendants turn over any and all infringing gray market tires in their possession, custody, or control along with any records regarding the sale of the gray market tires;

H.     For attorneys' fees and costs of suit; and

COMPLAINT

I.      For such further or other relief as the Court deems proper.

Dated: August 14, 2020          Respectfully submitted,

RICHARDS BRANDT MILLER NELSON

                    _s/ Steven H. Bergman_
                    Steven H. Bergman
                    *Attorneys for Plaintiffs*

G:\EDSI\DOCS\18932\0007\1B18295.DOCX

14